(Decided 2nd July, 1873.)

JOHN H. LEWIN *vs.* WILLIAM H. SIMPSON.

*When an Appeal will not be Dismissed— What is necessary for the Plaintiff to prove, to entitle him to more than Nominal Damages, in an Action for injury done his Land by the overflow of water backed upon it from the Defendant's mill-pond—Admissible and relevant Evidence—Evidence—Irrelevant and inadmissible Evidence—From what an Appeal does not lie.*

An appeal will not be dismissed because the transcript of the record of proceedings in the case was not transmitted to the Court of Appeals within the time prescribed by law, it being shown by the certificate of the clerk of the inferior Court, which was not controverted, that the failure to transmit was occasioned by his inadvertence and misplacing of the original papers.   .

In an action to recover damages for injury done to the plaintiff's land by the overflow of water backed upon it from the defendant's mill-pond, to entitle the plaintiff to recover more than nominal damages, it is incumbent upon him to prove to the satisfaction of the jury that the water did flow back upon *his land*, that this was caused by the wrongful acts of the defendant, and that he had suffered some injury therefrom prior to the institution of the suit.

On the trial of an action to recover damages for injury done to the plaintiff's land by the overflow of water backed upon it from the defendant's mill-pond, the plaintiff, for the purpose of showing the natural fall of his land above

said pond, and that said land could be drained and made productive if the water of the pond were kept within the prescribed boundaries between the plaintiff and defendant, offered to prove by N. H. that he was at the place in question on the 11th of March, 1872; that it was two hundred and fifty yards, more or less, from said boundaries to the spring of the plaintiff; that when he first arrived the water was running down the stream leading from the spring-house into a piece of low ground, whence it emptied into the pond; that the water of said pond was not then beyond the boundaries aforesaid; that an hour and a half, or two hours after, when he returned, the water of the pond was beyond said boundaries, and the water was backed up into a ditch, cut by the plaintiff on his own land for the purpose of draining it, sixty-three feet from the mouth thereof, and was eight and a half inches deep at its mouth, where it emptied into said low ground; that there was a fall of six feet and two inches from the plaintiff's spring-house to the mouth of said ditch. The plaintiff then propounded the following question to the witness : "On the day that you were there, on the second occasion, what was the depth of the water twenty yards up the ditch, which you have said was eight and a half inches deep at its mouth?" This question being asked for the purpose of showing the fall of the ground, intending further to show that the ditch was regularly dug. And the further question : "Did you or not on the same day examine the ditch, and can you or not say whether it was so dug that its bottom was regularly graded and in conformity with the natural surface of the ground through which it passed?" The plaintiff's counsel stating at the same time, that they intended to follow up this question and proof, by evidence showing that the said ditch was in the same condition then (at the time of the trial) that it was two years before that time, so far as the depth was concerned, except where partially filled by obstructions caused by the backing up of water by the defendant. The Circuit Court disallowed these questions upon objection by the defendant. On appeal, it was HELD :

That if the questions had been answered as the plaintiff's counsel assumed they would be, and the answers followed up by other evidence as proposed, the testimony thus elicited would have been relevant and admissible. It would have shown what was the *grade* of the plaintiff's land, how abruptly or gradually its surface ascended from the edge of the water; and would have corroborated other testimony showing the land was capable of being drained and cultivated, and to what extent, if the water was confined within the limits contended for by the plaintiff, and to what extent the overflow interfered with such drainage and cultivation. The witness should have been allowed to answer the questions.

Lewin vs. Simpson.

On the same trial, a witness on behalf of the plaintiff testified that he was on the property on the 23rd of September, 1871, and was shown the boundaries between the plaintiff and the defendant in their presence; that the land of the plaintiff could be drained, except about one acre, if the pond of the defendant were kept within the boundaries as shown to him. The plaintiff then offered to propound the following question: "At the time spoken of—the 23rd of September, 1871—when you were on the property, and the boundaries between the plaintiff and the defendant, around the mill-pond, were shown to you, did or not the water of the dam of the defendant extend beyond said boundaries and overflow the plaintiff's land?" The plaintiff's counsel stating that he would follow this up by proof showing that the water was lower than it had been for some time prior to the bringing of the suit. HELD:

That if the question had been answered in the affirmative, and followed up as proposed, the testimony would not only have been admissible for the same purpose sought by the previous questions, but would also have tended to prove another material part of the plaintiff's case, viz: that the water did overflow his land prior to the bringing of his action.

The defendant in the cause being on the stand as a witness, was asked by his counsel if he recollected an *interview* between himself and R. from (whom he purchased the property,) in which the latter pointed out on the ground the boundaries of the land, and if so, whether the conversation took place before or after he purchased the property? To which he replied that R. pointed out the boundary stones, but it was after he bought the land and paid for it. The witness was not asked to repeat, and in fact did not detail *any part of the conversation* that took place between them. HELD:

That the plaintiff, on cross-examination of the witness, had no right to require him to state all the conversation that then occurred between R. and himself, on the ground that he had already stated a part of it.

After the defendant in the cause had closed his case, the plaintiff offered testimony by C. W. Royston, tending to prove that when the boundary stones, named in the deed from David Sampson and wife to the witness, and in the deed from the witness to the defendant, were fixed and placed, the water of the dam was not then beyond these boundaries, nor at the time the deed was given by the witness to the defendant; that the witness did not claim any right to back the water beyond these boundaries while he owned the property; that he showed the said stones and boundaries to the defendant before the execution of the deed to him. The plaintiff then proposed to prove by the same witness that when he was negotiating for the purchase of the said

mill property, he and David Sampson and Nicholas Sampson his son, met on the property, agreed as to what land was necessary for the mill-pond, made a survey of the lines, and put down the stones mentioned in the deed from David Sampson to the witness, for the purpose of limiting the water right of the owner of the said mill property; and it was understood and agreed that the said stones and maple tree should be the boundaries thereof, and that the water of the said pond should not extend beyond the lines and bounds so fixed; that then, under said understanding and agreement, the deeds were executed and delivered by the said David Sampson and Nicholas Sampson and wife to the witness. And the plaintiff further proposed to prove by the same witness that he told all this to the defendant, before he executed the deed to him for said property, and pointed out to him the stones and maple tree as the limits to which the owner of the mill property had a right to back up the water of the said mill-pond. The plaintiff's counsel stated at the time that they did not offer this evidence to contradict the deeds mentioned, or any of them, but to show the extent of the water right under said deeds, and that it did not authorize the overflow of water beyond the boundaries named in the said deeds. HELD:

That for such purpose the testimony was altogether inadmissible; but that as it was also offered for "any *other purpose* in the cause which did not vary the purport of said deeds," it would be admissible as tending to rebut a prescriptive right of flowage in those under whom the defendant claimed title.

The plaintiff proposed to prove by Thomas G. Rutledge, that David Sampson instructed him that Nicholas Sampson his son could not convey any water right to a considerable portion of the upper part of the mill-pond; that Nicholas assented to this; that David Sampson instructed the witness that the deed which he was employed to prepare to C. W. Royston must convey the water right to the upper portion of the mill-pond, and that he, David, and his wife must execute a deed along with Nicholas and his wife; that the stones, the boundaries of the dam, were not up at the time the courses and distances were given, as contained in a deed from Nicholas Sampson and wife to Royston; that witness prepared the deed that far; that when he went to David Sampson's where the deeds were to be executed, David said to him, "You can go on and finish the deed without the water right, for they have persuaded me out of a deed, instead of a water right, for the upper end of the pond"—that the deeds were prepared and executed accordingly. The plaintiff's counsel stated at the time, the evidence was not offered to contradict the deeds, but to show the extent of the water right thereunder, and that it did not authorize the overflow of water beyond the boundaries mentioned in the deeds, and for any other purpose in the cause which did not vary the purport of the deeds. HELD:

That the evidence so proffered was entirely irrelevant, and inadmissible for any purpose.

At the end of the trial when the plaintiff's evidence was in, and the defendant on his part had closed his case, the plaintiff proposed to show certain acts and doings of the defendant in raising his dam and increasing the quantity of the water in the mill-pond, so as to overflow the land of the plaintiff. Held:

That this evidence should have been offered in chief; it was in no sense rebutting testimony, and was therefore inadmissible at that stage of the trial.

The defendant being under cross-examination as a witness, and the plaintiff's counsel being busily engaged in writing down his exact language, with a view to contradict him; the defendant's counsel objected to the time being consumed in that way, and the Court decided that it would not wait to allow the plaintiff's counsel time to write down the evidence. Held:

That from this action of the Court no appeal would lie..

Appeal from the Circuit Court for Baltimore County.

The nature of the case is fully stated in the opinion of the Court. The following exceptions were taken by the plaintiff.

*First Exception.*—At the trial of this cause the plaintiff offered evidence tending to prove that he was in possession of the land conveyed to him by deed from Thomas G. Rutledge, *et al.*, executors, etc., and offered evidence tending to prove what were the boundaries between the land of the plaintiff and that of the defendant around the mill-pond; and that the water was obstructed by the dam upon which the defendant, before the commencement of the suit in this case, had placed repairs; and that the defendant had repaired said dam by putting dirt or gravel upon the breast of said dam; and that the plaintiff, before the commencement of this suit, had notified the defendant that the land of the plaintiff was overflowed by the water dammed up and backed upon his land by said dam and obstruction; and that the defendant must remove said water from the plaintiff's land;

and that unless the said water was so removed, the plaintiff would bring suit to compel him to do so; and that the defendant did not remove the water from the land of the plaintiff before the commencement of this suit. And also offered evidence tending to prove that water was backed up by said defendant's dam, and the obstruction placed by him in the stream in which the same was erected, in a ditch which the plaintiff had cut on his own land for the purpose of draining it—which water flowed in said ditch, its natural course, upon the lands of the plaintiff, into a low piece of ground which emptied therefrom into the defendant's pond; and offered testimony tending to show that said ditch was entirely on the plaintiff's land; and that in consequence of the water being backed up in said ditch beyond the defendant's boundary line and upon the plaintiff's land, the plaintiff could not drain his land, and it was rendered much less productive than it would otherwise be. The plaintiff, for the purpose of showing the natural fall of his land above said pond, and that said land could be drained if the defendant kept the water of said pond within the boundaries of his land, offered proof by *Nicholas Hoshall*, tending to prove that the said land could be drained, if the water was within the aforesaid boundaries; that the witness was on the property mentioned on Monday, 11th of March, 1872; that it is 250 yards, more or less, from said boundaries to the spring of the plaintiff; that when witness first arrived on the property on the day mentioned, the water was running down the stream leading from the spring-house into the low ground near the said pond, whence it empties into the pond, and was running without obstructions at and near the mouth of said stream; that the water of said pond was not then beyond the boundaries aforesaid; that he returned to said pond an hour and a half or two hours afterwards; that the water of said pond was then beyond the said boundaries, and

was backed up said ditch sixty-three feet from the mouth thereof, and was eight inches and one-half deep at the mouth of said ditch, where it emptied into said low ground, that there is a fall of six feet and two inches from the plaintiff's spring-house to the mouth of said ditch, at the place just mentioned. The plaintiff then propounded the following question to said witness : "On the day that you were there, on the second occasion, what was the depth of the water twenty yards up the ditch, which you have said was eight and one-half inches deep at the mouth of the ditch? this question being asked for the purpose of showing the fall of the ground, intending further to show that the ditch was regularly dug?"

To the propounding of this question to the witness, the defendant objected, and the Court sustained the objection, and refused to allow the plaintiff to propound said question. To this ruling of the Court and exclusion of testimony the plaintiff's counsel excepted.

*Second Exception.*—The plaintiff's counsel offered to propound to the said witness, *Nicholas Hoshall*, the following question : "Did you or not, on the 11th of March, 1872, examine the ditch of which we are now speaking and can you or not say whether said ditch is so dug that the bottom of the same is regularly graded and in conformity with the natural surface of the ground through which it passes?" The plaintiff's counsel stating at the same time, that they intended to follow up this question and proof, by evidence showing that the said ditch was in the same condition then, the time of the *trial*, that it was two years before that time, so far as the depth was concerned, except where partially filled by obstructions caused by the backing up of water by the defendant.

To the propounding of this question to the witness, the defendant's counsel objected, and the Court sustained the objection, thereupon, the plaintiff excepted.

*Third Exception.*—The plaintiff, proved by *Benjamin F. Jourdan*, that he resides in Baltimore County; that

Lewin *vs.* Simpson.

he knew the property of the plaintiff and defendant; was on the property on the 23rd day of September, 1871—the day on which they attempted to arbitrate ; that he was shown the boundaries between the plaintiff and defendant in their presence ; that the land of the plaintiff could be drained except about one acre, if the pond of the defendant were kept within the boundaries, as shown to him. The plaintiff then offered to propound the following question: "At the time spoken of—September 23rd, 1871—when you were on the property and the boundaries between the plaintiff and defendant around the mill-pond, were shown to you, did or not the water of the dam of the defendant extend beyond said boundaries, and overflow the plaintiff's land?" The plaintiff's counsel stating at the time to the Court, that he would follow this up by proof showing that the water was lower then than it had been for some time prior to the bringing of this suit.

To the propounding of this question the defendant's counsel objected, and the Court sustained the objection. To this ruling of the Court and exclusion of the testimony, the plaintiff excepted.

*Fourth Exception.*—*Caleb W. Royston,* from whom the defendant purchased the property, being produced as a witness on the part of the plaintiff, testified that there were stones and a maple tree, which were boundaries of the land sold by him to the defendant, and which he pointed out to the defendant as the boundaries of the land before the purchase, as he thought ; the defendant, being afterwards called at a subsequent stage of the trial, and sworn in his own behalf, testified that he bought the mill-property and lived there, and had done nothing to increase the water, and that he had not raised the dam or done anything to increase the volume of water ; that the wheel of the mill was the same as when he bought it, and that he saw no difference in the force of the shot ; and described how the dam was built, and that it was no

higher than when he first knew the property in 1864. Defendant's counsel then asked him if he recollected an interview between himself and said Royston, in which the latter pointed out on the ground the boundaries of the land; and if so, whether the conversation took place, before or after he purchased the property? Witness replied that Royston pointed out the boundary stones, but it was after he bought the land and paid for it; that the height of the dam varied with the season; and the defendant was then examined at some length by his counsel, with reference to the power and fall of the water, to the extent of the water towards the stones and maple tree, and testified that the water of said dam did not ever get up to these stones and tree, except in a freshet. And upon cross-examination, the witness testified that he was positive the water was not up to the stones on the 23rd of September last, and that Royston did point out the stones.

Plaintiff's counsel then proposed to ask the witness to "State all the conversation that took place between Royston and himself, when the former pointed out to him the stones and maple tree as boundaries."

To this proposition the defendant's counsel objected, and the Court sustained the objection. The plaintiff excepted.

*Fifth Exception.*—Upon cross-examination of the defendant, the plaintiff's counsel were busily engaged in writing the exact language of the witness, with a view to contradict him when the defendant's counsel objected to the time being consumed in writing down the said evidence; and the Court decided that it would not wait to allow the plaintiff's counsel time to write down said evidence. To this ruling and decision of the Court, the plaintiff excepted.

*Sixth Exception.*—The defendant offered evidence tending to prove that the water in the mill-pond had been

backed up by those in possession of the mill property, beyond the lines mentioned in the deed from Royston and wife to defendant, before defendant's possession, and that said water was beyond said lines and on the land now claimed by the plaintiff at the time the said defendant purchased the property from Royston and wife, and that if the defendant had backed up water on the land of the plaintiff beyond the lines of the said deed just above mentioned, it was backed up no further than he had a right to back it up.

After the defendant had closed his case, the plaintiff offered testimony by *Caleb W. Royston*, tending to prove that when the boundary stones named in the deed from David Sampson and wife to Royston, and in the deed from Royston to the defendant, and heretofore referred to were fixed and placed, Nicholas Sampson, David Sampson and witness were present, and also Surveyor William Kelbaugh ; that the water of the dam was not then beyond the boundaries then fixed ; that the water of the said dam was not beyond the boundaries at the time the deed was given by Royston to the defendant; that he did not claim any right to back the water of the dam beyond the said boundaries whilst he owned the property ; that he never did back the water up beyond said boundaries to his knowledge, and it was not beyond the said boundaries whilst he held the property, except in a freshet, and also offered evidence tending to prove that the witness showed the defendant, the said stones and boundaries before the execution of the deed to him from the witness, and before the payment of the purchase money, except the sum of one hundred dollars ; and also offered testimony tending to prove that at the time of the negotiation for the purchase of said mill property, that the lines of said mill property did not include but little more than one-half of the pond as it stood at that time. The plaintiff then proposed to prove by said witness, that when he was

negotiating for the purchase of the said mill property, he refused to buy unless Nicholas Sampson would procure from his father, David Sampson, and his wife, a deed for as much land as was necessary for the mill-pond ; that David Sampson, Nicholas Sampson and witness met on the said property, agreed upon what land was necessary for the mill-pond, made a survey of the lines and put down the stones mentioned in the deeds from David Sampson to witness for the purpose of limiting the water-right of the owner of the said mill property ; and it was understood and agreed that the said stones and maple tree should be the boundaries thereof, and that the water of the said pond should not extend beyond the lines and bounds so fixed ; that then said deeds were executed and delivered by the said David Sampson and Nicholas Sampson and wife to the witness, under the said under-standing and agreement. And the plaintiff further pro-posed to prove by the said witness, that he told all this to the defendant, before he executed the deed to him for said property, and before any money was paid to him by the said defendant, except the sum of one hundred dollars, and pointed out the stones and maple tree to the said defendant, as the limits to which the owner of the mill property had a right to back up the water of the said mill-pond. The plaintiff's counsel stated at the time that they did not offer this evidence to contradict the deeds above mentioned, or any of them, but to show the extent of the water-right under said deeds, and that it did not authorize the overflow of water beyond the boundaries named in the said deeds, and offered said evidence for any other purpose in the cause which did not vary the purport of the said deeds, or either or any of them. To the admissibility of which evidence the defendant's counsel objected, and the Court sustained the objection. To this ruling of the Court, the plaintiff excepted.

*Seventh Exception.*—The plaintiff then proposed to prove by Thomas G. Rutledge, that David Sampson instructed him, that Nicholas Sampson, his son, could not convey any water-right to a considerable portion of the upper part of the dam ; that portion of the land which was afterwards conveyed by David Sampson and wife to Caleb W. Royston ; that Nicholas Sampson at the time assented to this, and admitted that he could not convey any water-right to the said portion of land embraced in the said deed from David and wife ; that David Sampson instructed witness that the deed must convey the water-right to the upper portion of the dam, and that he and his wife must execute a deed along with Nicholas and his wife ; that the stones, now the boundaries of the dam, were not up at the time the courses and distances were given, as contained in a deed from Nicholas Sampson and wife to Royston ; that he prepared the deed that far ; that on the day Justice Standiford and himself were called upon to take the acknowledgments of said deeds, at David Sampson's house ; David Sampson said, "You can go on and finish the deed without the water-right, for they have persuaded me out of a deed, instead of a water-right, on the upper end of the dam. I suppose it does not make any difference to me ; Conrad Kelbaugh has surveyed it, and is now writing the deed, and when it is completed, we will just acknowledge both deeds, and that will end or finish the matter." He finished his deed and Kelbaugh finished his, and the witness and Justice Standiford took the acknowledgment of the parties to them. The plaintiff's counsel stated at the time that they did not offer this evidence to contradict the deeds above mentioned, or either of them, but to show the extent of the water-right under said deeds, and it did not authorize the overflow of water beyond the boundaries mentioned in the said deeds, and for any other purpose in the cause which did not vary the purport of the said deeds, or either of them.

To the admissibility of this evidence the defendant's counsel objected, and the Court sustained the objection. The plaintiff excepted.

*Eighth Exception.*—The plaintiff proposed to prove by himself, that in September, 1870, and before the bringing of the suit in this cause, he saw one or more persons wheeling dirt and gravel from the side of the road, and putting it on the top of the dam behind the loose stones, and about two-thirds of the way from the east side of the dam, and that the new earth placed thereon, for a considerable distance on the dam, was seen from the house of the witness, and seemed to be at least one rood in length, and that the defendant dammed up the water so as to raise it to the height of the first stump named in the plat exhibited by the defendant to the jury, and nearest the breast of the dam, and then that the water was backed up a considerable distance over the boundary lines and up the ditch of the meadow of the plaintiff, and that up to the bend of the ditch, as shown on the plat aforesaid, the said ditch was full of water to the top. To the admissibility of this evidence the defendant's counsel objected, and the Court sustained the objection. The plaintiff excepted.

The jury rendered a verdict for the defendant, and the plaintiff appealed.

The cause was argued before BARTOL, C. J., STEWART, BOWIE, BRENT, MILLER and ROBINSON, J.

*Wm. S. Keech* and *Wm. S. Waters,* for the appellant.

*Arthur W. Machen,* for the appellee.

MILLER, J., delivered the opinion of the Court.

The motion to dismiss this appeal must be overruled. The certificate of the clerk, appended to the record, that

it was through his inadvertence and misplacing of the papers, that the record was not sent up within the six months, not being controverted, gratifies the 16th Rule regulating appeals. It is unlike the case of *Hannon vs. Robey,* 9 *Gill,* 440. There the certificate of the clerk was to the effect that the record was detained by order of the appellant's counsel, and this Court refused to recognize it as evidence, on the motion to dismiss. As the law then stood, the delay in the transmission of the record, where the appeal was taken in due time, was presumptively the fault of the clerk, and not of the appellant. Under the present rule that presumption is reversed, and now the delay is presumed to be the fault of the party and not of the clerk. The appellant must now show the delay was occasioned by the neglect, omission or inability of the clerk, and where he shows this by the clerk's own certificate to that effect, it is sufficient, unless what the clerk states is disputed or controverted by the appellee, in which case the question must be determined upon affidavits taken under the order of this Court.

This suit was brought by the appellant against the appellee, to recover damages for injury done to his land by the overflow of water backed upon it from the defendant's mill-pond. It is one of that class of actions where damages can be recovered only down to the time of instituting the suit. The suit was instituted on the 16th of November, 1870, and tried in March, 1872. During the progress of the trial eight exceptions were taken by the plaintiff, all of which, except the fifth, are to rulings rejecting evidence.

It appears from the testimony admitted and proffered on the part of the plaintiff, that the land now owned by the plaintiff, and the mill-site now owned by the defendant, formerly belonged to David Sampson and Nicholas Sampson, his son, the latter owning the mill-site, but not exactly of the same extent as at present; that Royston

purchased the mill property from the son, but when nego-
tiating for the purchase refused to buy, unless the father
would convey to him as much of his land as was necessary
for the mill-pond at its upper end; that all three of them
then met on the property, agreed upon what land was
necessary for the pond, made a survey, or had one made,
put down stones and fixed boundaries showing the limits
of the pond, and deeds were thereupon executed to Roy-
ston by the father and son separately, the latter conveying
the mill-site as he had owned it, and the former the addi-
tional land agreed upon at the head of the pond. These
deeds are not in the record, but it is stated that the stones
and boundaries above referred to are mentioned in them.
From this it may be inferred these deeds, and especially
that from the father, which seems to be the one of most
importance in this controversy, were conveyances of a
mill-site and property, and a piece of land by metes and
bounds, and among the boundaries called for are the
stones and maple-trees spoken of by the witnesses. Roy-
ston seems to have held the property as he purchased it,
for some time, and then sold and conveyed it to the defen-
dant. This conveyance is not in the record, and it does
not appear (if it were material it should) how it describes
the property, whether by simple reference to the deeds
from the two Sampsons, or otherwise. The plaintiff
became purchaser of the residue of the land owned by
Sampson, the father, and he insists the defendant has no
right, by raising his mill-dam or otherwise, to cause the
water to flow back upon his land beyond these boundaries.
This statement of the case is not derived from admitted
facts, nor from any clear and consecutive narrative con-
tained in the record, but from the testimony set out in the
several bills of exception as offered and admitted, or pro-
posed and rejected. We have made it as showing our
understanding of the nature of the controversy and points
in dispute, and shall proceed to dispose of, as far as can

now be done, the questions presented by the several exceptions.

In order to make out his case and recover more than nominal damages, it was incumbent upon the plaintiff to prove to the satisfaction of the jury, that the water did flow back upon *his land*, that this was caused by the wrongful acts of the defendant, and that he had suffered some injury therefrom prior to the institution of this suit. It was his right to offer any evidence which tended to prove these points. Any testimony pertinent and relevant to these questions was pertinent and relevant to the issue, and should have been admitted. If the questions propounded to the witness *Hoshall* in the first and second exceptions had been answered as the plaintiff's counsel assumed they would be, and the answers followed up by other evidence as proposed, in our opinion the testimony thus elicited would have been relevant and admissible. It would have shown what was the *grade* of the plaintiff's land, how abruptly or gradually its surface ascended from the edge of the water. It would have corroborated other testimony, showing the land was capable of being drained and cultivated, and to what extent, if the water was confined within the limits contended for by the plaintiff, and to what extent the over-flow interfered with such drainage and cultivation. It was the right of the plaintiff to submit all the evidence he could adduce on these points to the jury, by whom it was material to be considered in estimating the damages. The fact that what was offered and rejected might be cumulative did not render it inadmissible. Nor does the fact that the witness saw the stage of the water in various parts of the ditch in reference to which the questions were asked him, subsequently to the commencement of the suit, alter the case. It was proposed to connect it with proof showing that the same condition as to the *grade* of the land existed antecedently to the suit, that the surface of the land had not changed

since that time. This, and not to enable the jury to give damages for any injury sustained since the action, was, as we understand it, the purpose of the proffered testimony. Confined to this purpose, it was admissible, and the witness should have been allowed to answer the questions. So if the question asked the witness *Jourdan* in the third exception had been answered in the affirmative, and followed up as proposed, the testimony would not only have been admissible for the same purpose, but would also have tended to prove another material part of the plaintiff's case, viz: that the water did over-flow his land prior to the bringing of this action. It was an indirect but not an inadmissible mode of proving that fact. We are therefore of opinion the rulings in these three exceptions are erroneous.

The ruling in the fourth exception is entirely correct. The defendant, when on the stand as a witness, was asked by his counsel if he recollected an interview between himself and Royston, in which the latter pointed out on the ground the boundaries of the land, and if so whether the conversation took place before or after he purchased the property? to which he replied, that Royston pointed out the boundary stones, but it was after he bought the land and paid for it. He was neither asked to repeat, nor did he in fact detail *any part of the conversation* that took place between them at that time. The plaintiff, therefore, had no right to require of him to state *all* the conversation that then occurred between them on the ground that the witness had already stated *part* of it. It is not a case illustrating the familiar rule of evidence.

One of the purposes for which the rejected testimony in the sixth exception was offered, is as stated, not to contradict the deeds, "but to show the extent of the water-right under said deeds, and to show that the water-right under said deeds did not authorize the overflow of water beyond the boundaries named in the said deeds."

Though the deeds are not in the record, it is quite clear they must speak for themselves on this subject. For this purpose the testimony was altogether inadmissible. But it was also offered "for any *other purpose* in the cause which did not vary the purport of said deeds," and it has been suggested in argument at the bar, that it was admissible to rebut the claim to the right of flowage by *prescription*, which the defendant had set up. If such a claim was in fact preferred, (and that it was, may perhaps be fairly inferred from the testimony offered by the defendant in the first part of this exception,) then, in our opinion, this testimony was admissible. But, this may be made more apparent upon another trial, and if the defendant shall then distinctly assert a prescriptive right of flowage in those under whom he claims title, it will be competent for the plaintiff to offer the testimony in this exception as tending to rebut and overthrow that right.

We are unable to perceive any ground upon which the testimony offered in the seventh exception could be admitted. It appears to us to be entirely irrelevant and inadmissible for any purpose, and was properly rejected. The testimony offered in the eighth exception was clearly such as the plaintiff ought to have offered in chief. It was in no sense rebutting testimony and was properly rejected at that stage of the trial.

From the fifth exception it appears that while the defendant was upon cross-examination as a witness, the plaintiff's counsel were busily engaged in writing down the exact language of the witness, with a view to contradict him, when the defendant's counsel objected to the time being consumed in this way, and the Court decided it would not wait to allow the plaintiff's counsel time to write down this evidence, and to this ruling this exception was taken. It is manifest that this is one of those matters which must be left to the discretion of the Judges who preside at trials and cannot be reviewed on appeal.

The practice of interrupting the progress of a trial to enable examining or opposing counsel to write down the very words of all the witnesses, a practice which, when insisted on, Judges are very reluctant to interfere with and stop, is often productive of *great expense* as well as tedious and unnecessary delay in *nisi prius* trials. In some cases it may defeat the ends of justice. It not unfrequently happens that the *very rapidity* of question and answer, especially on cross-examination, is the only mode of eliciting the truth. It is in this way that truth may be wrung from the lips of a prevaricating and unwilling witness, and the falsehood and studied fabrication of a dishonest and untruthful one, be detected and exposed. In such cases to allow delay for the purpose of having each question and answer written down by the opposing counsel, would often defeat the very ends and purposes for which the important right of cross examination is given. But whether the examination be a cross-examination, or in chief, the conduct of the trial in this respect must rest with the discretion of the presiding Judges. Delay should be granted or withheld according to the importance of the cause and the testimony being given. Before careful and attentive Judges, injurious mistakes in this particular will rarely occur. But as we have said, in no case is such delay a matter of right in counsel, which, if denied, can be made the subject of appeal and review by this Court.

*Judgment reversed, and*
*new trial awarded.*

(Decided 2nd July, 1873.)