# THE CITY DAIRY COMPANY

## *vs.*

# SALLIE H. SCOTT.

*Streams: diversion of—; overflooding another's property; rights of parties.*

The owner of a lot of ground has the right to prevent the unlawful flow of water over it; and if he do so by the filling up of his lot of ground, and by reason of the same his neighbor's land is flooded by the water, he is not responsible therefor.

p. 555

The only charge in a declaration was that the defendant *unlawfully* diverted a certain stream or drainage, and thereby caused the injuries complained of to the plaintiff's land; in order to show that what the defendant did was *unlawful* it was incumbent upon the plaintiff, under the circumstances of the case, to show that the drainage complained of flowed naturally upon the defendant's lot because of the natural slope of the land, or that the right to have it flow over the defendant's land had been acquired by prescription or grant.                    p. 553

*Decided January 9th, 1916.*

Appeal from the Court of Common Pleas of Baltimore City.  (STUMP, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*E. Allan Sauerwein, Jr.,* and *Victor I. Cook,* for the appellant.

*James Morfit Mullen* and *Lindsay C. Spencer,* for the appellee.

Thomas, J., delivered the opinion of the Court.

The declaration in this case alleges that the plaintiff was the owner of the leasehold interest in the house and property in Baltimore City known as No. 2797 Remington avenue; that in the years 1914 and 1915, the defendant, The City Dairy Company, a corporation, unlawfully diverted a certain stream of water "that ran eastward on Twenty-eighth street, adjoining the plaintiff's property, * * * carrying the surface and house drainage from the area and buildings in the block bounded by Remington avenue, Twenty-eighth street, Huntington avenue, Twenty-ninth street and the adjoining neighborhood," and that by reason thereof the said stream, instead of running past the plaintiff's property, "as before the unlawful acts of the defendant," was caused "to run upon and empty into the premises of the plaintiff," whereby the plaintiff's property was greatly damaged, and that in consequence thereof her tenants gave up their lease and she was unable to rent the property.

The defendant interposed the plea that it did not commit the wrong alleged, and during the trial, which resulted in the judgment in favor of the plaintiff for $300.00 from which this appeal was taken, the defendant reserved five exceptions to the rejection of certain evidence offered by it, and one exception to the rulings of the Court below on the prayers and on motions to strike out evidence produced by the plaintiff and admitted subject to exception.

The property of the plaintiff is at the corner of Remington avenue and Twenty-eighth street, spoken of in the evidence as the northeast corner. Remington avenue runs northwest and southeast, and is crossed by Twenty-eighth street at right-angles. These streets were not paved, and for a number of years prior to the acts of the defendant complained of, the drainage from Remington and Huntington avenues, northwest of Twenty-eighth street, and from Twenty-eighth street, west of Remington avenue, flowed, as shown by the photographs offered in evidence and produced at the argument of

the case in this Court, in a well-defined stream, in a north-easterly direction on Twenty-eighth street, past the plaintiff's property, to the rear of her lot, and ultimately found its way into a pool or pond located between Twenty-eighth and Twenty-ninth streets, several hundred feet east of Remington avenue and plaintiff's lot.

The grade of Remington avenue and Twenty-ninth street, and the land north of Twenty-ninth street was much higher than the lot on which the pool was located, and there is evidence tending to show that water from a spring thereon, and the surface water or drainage on that lot, and over that lot from the adjoining land to the northwest, formerly flowed either into pools or ponds on or adjoining the lot and from those ponds or pools into Sumwalt Run, which flowed in a southeasterly direction through a ravine just east of the lot, or directly into Sumwalt Run.

In 1908 the City constructed a storm water drain or sewer eight foot in diameter, following the course of Sumwalt Run, "as a tunnel for that stream and tributary drainage," in which there were two "openings" or "inlets," of twenty-four inch terra cotta pipe, on the north side of the sewer, which "took care of the drainage" that formerly flowed into Sumwalt Run. One of these openings was east of the lot on which the pool was located, and the other was southeast of the intersection of Twenty-eighth street and Remington avenue. After the construction of this drain or sewer by the City, various persons commenced to fill up the ravine from Twenty-sixth street towards Twenty-eighth street, and the evidence shows that prior to the filing of the ravine east of Twenty-eighth street, the drainage on Twenty-eighth street flowed in a *southeasterly* direction towards Sumwalt Run and the opening in the sewer southeast of the corner of Twenty-eighth street and Remington avenue.

In January, 1914, the defendant purchased the lot on which the pool was located and also a larger parcel of land just north of 29th street and east of Remington avenue.

After it acquired the property, the defendant was notified by the Health Department that the pool referred to constituted a nuisance and that the defendant would have to abate the nuisance. In August, 1914, the defendant, when grading its lot north of 29th street, moved a large quantity of earth across 29th street and dumped it on its lot south of 29th street, filling up the lot and the pool.

The plaintiff offered evidence tending to show that the filling up of defendant's lot obstructed the flow of the stream in question over the defendant's lot to the pool, and that at times of heavy rains the drainage that flowed on 28th street and from 28th street over the land to the rear of her lot, was forced back upon her lot and into her house to the depth of several feet, thereby injuring her property and causing her to lose her tenants.

The defense in this case, as presented by the defendant's prayers, is based upon two theories: (1) That the *narr.* alleges in effect that the stream diverted by the defendant was a *natural* stream, which carried with it surface and house drainage, and that there is no evidence in the case to establish the existence of such a stream. (2) That unless the drainage on 28th street, in flowing upon the lot of the defendant, followed its natural course according to the natural slope of the ground, or had been allowed to flow over the defendant's lot for twenty years or more before the obstruction of the same by the defendant, the plaintiff was not entitled to recover.

The first of these contentions, and the further contention that there is no evidence in the case to show that the drainage in question followed its natural course, or that it had flowed over the defendant's lot for twenty years or more before the alleged obstruction thereof, is presented by the defendant's first prayer, which asserts that under the pleadings there is no evidence in the case legally sufficient to entitle the plaintiff to recover.

The *narr.* alleges that the defendant diverted a "certain stream of water that ran eastward on Twenty-eighth street, * * * said stream carrying the surface and house drainage from the area and buildings in the block bounded by Remington avenue," etc. It does not state the source or origin of the stream, or that it included any water other than the "surface and house drainage" referred to. According to *Webster's New International Dictionary,* a stream is "a current or course of water or other fluid, flowing on the earth, as a river, brook, etc., or from a vessel, reservoir or fountain; * * * any course of running water." In *Mitchell* v. *Bain,* 42 N. E. 230, the Supreme Court of Indiana said: "A water course is a stream of water having a bed, sides and banks, and the water need not flow continually. * * * Even surface water becomes a natural water course at the point where it begins to form a reasonably well-defined channel, with bed and banks or sides and current, although the stream itself may be very small, and the water may not flow continuously." In *P., W. & B. R. R.* v. *Davis,* 68 Md. 281, the Court held that the defendant was liable for changing the course of a stream of surface water to the injury of plaintiff's property, and in *B. & S. R. R.* v. *Hackett,* 87 Md. 224, the defendant was required to respond in damages for obstructing the natural flow of surface drainage. As we have said, there was a well-defined stream of water flowing in a northeasterly direction on Twenty-eighth street which carried the "surface and house drainage" referred to, and the evidence fully meets the averments of the *narr.,* so far as the character of the stream is concerned.

In considering the further contention of the appellant in support of its first prayer, it is important to keep in view the averment of the declaration that the injuries complained of were caused by the diversion of the stream *referred to in the narr.*

The evidence shows that the land of the defendant does not adjoin the land of the plaintiff, but at its nearest point is

about one hundred feet northeast of the plaintiff's lot. The drainage in question flowed in a northeasterly direction on Twenty-eighth street until it reached a point beyond a point opposite the rear end of plaintiff's lot, where it left Twenty-eighth street and flowed over the land between plaintiff's and defendant's lots to the defendant's lot and then over the defendant's lot to the pool thereon. The filling up of the defendant's lot obstructed the flow of the drainage referred to *from the adjoining land* over the lot of the defendant to the pool, and whenever there was a heavy rain the drainage flooded the plaintiff's lot and property and caused the injuries for which she seeks to recover. The only charge in the declaration is that the defendant *unlawfully* diverted the stream mentioned, and thereby caused the injuries complained of. In order to show that what the defendant did was *unlawful* it was incumbent upon the plaintiff, under the circumstances of this case, to show that the drainage flowed naturally upon the defendant's lot because of the natural slope of the land from the corner of Twenty-eighth street and Remington avenue, or that the right to have it flow over the defendant's land had been acquired by prescription or grant. *Lewin* v. *Simpson,* 38 Md. 468; 2 *Farnham on Waters, etc.,* secs. 558, 559b; *P. W. & B. R. R.* v. *Davis, supra; B. & S. R. R.* v. *Hackett, supra; Fahnestock* v. *Feldner,* 98 Md. 335. We have carefully examined the Record and fail to find any evidence to establish either of these requirements. On the contrary, the evidence shows that the natural slope of the land from the corner of Remington avenue and Twenty-eighth street was towards the southeast, and that the drainage on Twenty-eighth street, following its natural course, flowed in that direction into Sumwalt Run, and, later, into the City sewer, until the ravine east of Twenty-eighth street was filled up after the construction of the sewer in 1908. The diversion of the drainage from its natural course to the land of the defendant was, therefore, an unlawful invasion of its property, which it had the right to resist.

The appellee very earnestly insists that the defendant had no right to abate the nuisance on its lot by casting the water on the plaintiff's property. But that view deals with a situation with which we are not here concerned. This is not a case where A, upon whose land drainage has been unlawfully imposed by B, in order to get rid of it discharges it from his land upon the land of his innocent neighbor, C. It may well be that after water gets on A's lot, he is bound not to dispose of it in such a way as to injure C, who was in no way responsible for the nuisance on A's land. But that is hardly the case made by the pleadings, nor does the evidence in the case, when fairly interpreted, show that the defendant forced or turned the drainage mentioned, after it was on its land, or the water in the pool upon the property of the plaintiff. The witness Frances Thornton, did say, "that the dumping filled in the hole (the pool) which seems to have pushed the water back on Mrs. Scott's house," but, continuing her testimonoy, she said, "that they dumped the dirt into the hole where the water was; that after the water dissolved into the ground, and she has seen nothing of it since, and as they filled it in, that carried the water away ; * * * that the water that went on the Scott property came down from Twenty-ninth street and Remington avenue when we had those awful hard storms, and it would run right around back of her house down Twenty-eighth street, and before they dumped, the water didn't bother them at all." And the witness Lewis said, "that the City Dairy Company dumped south from Twenty-ninth street and blocked the water from the little drain and backed the water that came down Twenty-eighth street on to the Scott property; that he saw the Scott house on the thirty-first of May, 1914, and it was then in good condition ; that after they commenced dumping, water backed right up in the house." This witness further stated that he swept the water out of the house on several occasions when it was flooded. The testimony referred to is the only evidence in the case affording the slightest foundation for the

suggestion that the defendant forced the water out of the pool, or the drainage on its lot upon the property of the plaintiff, and when these statements are read in connection with the rest of the testimony of these witnesses, as well as other evidence in the case, it clearly appears that what these witnesses meant was that the "dumping" on the lot prevented the flow of the drainage over defendant's lot into the pool, and thereby caused it, when there was a heavy rain, to flood the plaintiff's property. Therefore all that the defendant did, so far as the drainage in question is concerned, was to fill up its lot so that the drainage could no longer flow upon its property. It is said in 3 *Farnham on Water, etc.,* p. 2576, that the proprietor upon whose land water is unlawfully thrown may erect barriers against it, and in the case of *Wills* v. *Babb,* 78 N. E. 42, 6 L. R. A. (N. S.), 136, the Supreme Court of Illinois said: "We think it clear the water of Hadley creek have been diverted from their natural channel by the Caffrey cut, the filling up of the old creek and the construction of the Miller, Likes and Atkinson levees, in such manner that appellees are justified in erecting a levee upon their east lines to protect themselves from the overflow of Hadley creek thus cast upon them. That is, by reason of the crowding of the waters of Hadley creek westward, a burden has been cast upon the lands of appellees that legally they are not bound to bear; and that the owners of such lands may lawfully erect such barriers along the eastern border of said lands as may be necessary to protect said lands from such overflow, or, in other words, that they may lawfully repel from their lands, by proper levees, the waters of Hadley creek which have been wrongfully cast upon their lands." After citing a number of cases, the Court quotes the statement in *Kauffman* v. *Griesemer,* 26 Pa. 407: "The plaintiffs had no right to insist upon his (the defendant's) receiving waters which nature never appointed to flow there, and against any contrivance to reverse the order of nature he might peaceably and on his own land take meas-

ures of protection. * * * The only servitude the plaintiffs could claim in the defendant's land was that it should receive the overflow which was natural and customary. * * * The elevation which protected him in ordinary times could not be reduced without his consent, and when the undue liberty was taken, he was not a wrongdoer in protecting himself from the consequences." The Supreme Court of Illinois said further : "It is, however, said on behalf of the appellant that he or his predecessors in title were in no way responsible for the change made in the course of Hadley creek. The same may be said of the appellees and their predecessors in title. * * * By claiming a prescriptive right to flood appellees' land by virtue of the acts of the persons who in part diverted the waters of old Hadley creek from its channel, the appellant makes the acts of those parties his own, and is bound thereby."

It follows from what has been said that the defendant's first prayer should have been granted.

We have considered the exception to the ruling of the Court on the prayers notwithstanding the exception includes rulings on motions to strike out evidence, contrary to the approved practice in this State. *Harris* v. *Hipsley,* 122 Md. 418.

There is evidence tending to show that there was a spring and small drain on the defendant's lot, and that the surface drainage on and over that lot naturally flowed in a southeasterly or easterly direction. If the filling up of the lot caused that drainage or the water from the spring to flow upon the plaintiff's lot and thereby contributed to the injury to her property, the defendant would, under appropriate pleadings, be liable, and we will therefore reverse the judgment of the Court below, without now awarding a new trial, with leave to the appellee to apply to this Court for a new trial, if she desires to do so, and then determine whether it shall be awarded.

*Judgment reversed, with costs.*