(Decided 6th January, 1888.)

---

## The Philadelphia, Wilmington and Baltimore Railroad Company *vs.* Thomas D. Davis.

*Railroad Company—Action for Damages for Obstructing the Flow of Surface water—Construction of Embankments— Damage from excessive Rainfalls—Vis Major.*

If for the purpose of constructing a railroad, or for any other purpose, it becomes necessary to erect an embankment, a proper outlet or culvert must be provided of ample capacity to carry off the flow of surface water, so that it may not be obstructed and thus accumulated on the upper and adjacent lands of other persons.

Such outlet must be of ample capacity to carry off all the water likely to be in it. But this rule is not applicable to an extraordinary and excessive rainfall, which is held to be *vis major*. Such infrequent and extraordinary occurrences cannot be foreseen and provided against, and for damages caused by them no one is responsible.

Where a railroad Company undertakes to alter the established outlet through which the surface water was carried away, it is incumbent on it to have the work done in a careful and skillful manner; and if it is done carelessly and negligently so that as a consequence, injury to neighboring property ensues, an action for damages is maintainable by the owner.

APPEAL from the Circuit Court for Harford County.

The case is stated in the opinion of the Court.

*Exception :*—At the trial the plaintiff offered the following prayer :

If the jury find that the plaintiff owned the premises mentioned in evidence, and that the same were adjacent to the bed of the railroad operated by the defendant, and that the natural flow of the surface water accumulated northerly and easterly of said premises, was between said premises and railroad westerly and across Clinton street by an open trench or gutter referred to by the witnesses, and that the defendant closed said open gutter and raised the bed of Clinton street, and that the closing of said gutter and raising the bed of said street caused such water, as usually flowed through said gutter, to dam and overflow the plaintiff's premises, and that such damages and overflow would not have occurred but for the closing of said gutter and raising the bed of said street, and that plaintiff's house was injured by such overflow, then they must find their verdict in favor of the plaintiff.

The defendant offered the ten following prayers :

1. The burden of proof is upon the plaintiff to show that the injury complained of was caused by the defendant, and unless the plaintiff shall satisfy the jury by the preponderance of testimony that it was caused by the defendant, the plaintiff is not entitled to recover, and their verdict must be for the defendant.

2. That if the jury shall find from the evidence that the line of defendant's railroad, from Clinton street to O'Donnell street, was built more than twenty years before the happening of the injuries complained of, and that there never has been, since the time the road was there built, any drainage across the tracks of defendant between those points, then the fact, (if the jury shall so find it) that there was no such drainage across the tracks, at and before the time of the injuries complained of, does not entitle the plaintiff to recover under the pleadings in this action.

3. That the defendant was under no legal obligation to take away by drains, or otherwise, the water that natu-

rally accumulated on or near the plaintiff's premises, and unless the jury shall find the defendant obstructed the natural course of the drainage at or near the plaintiff's premises, and thereby caused the injury complained of, the plaintiff, under the pleadings in this case, is not entitled to recover, and their verdict must be for the defendant, even though the jury shall further find that the drainage, as arranged by the defendant, was not sufficient to take away the water that naturally accumulated on or near the plaintiff's premises.

4. That there is no legally sufficient evidence in this case that the defendant changed the natural direction of the drainage at or near plaintiff's premises, and if the jury shall find from the evidence that the means of drainage adopted and put in by the defendant, were as sufficient as those formerly there to take away from the neighborhood of the plaintiff's premises any ordinary and usual accumulation of surface water, or such as might reasonably be expected, then the plaintiff under the pleadings in this case, is not entitled to recover, and the verdict of the jury must be for the defendant.

5. That there is no legally sufficient evidence in this case that the defendant ever changed the natural direction of the drainage at or near the plaintiff's premises, or that the defendant ever diminished or decreased the carrying capacity of any of the drains, except the drain across Clinton street; and even if the jury shall find that defendant put across Clinton street a drain of less carrying capacity than that formerly there, yet if they shall further find that the defendant put in other drains draining the same area, which, together with the new drain across Clinton street, had a greater carrying capacity than the old drain across Clinton street, then, under the pleadings in this case, the plaintiff is not entitled to recover, and the verdict of the jury must be for the defendant.

6. If the jury believe from the evidence that the plaintiff's premises have been overflowed by water from time

to time during heavy rains, in the last four or five years, in the manner described by the witnesses, and that such overflow was caused by an increased and large volume of water being caused to flow in that direction than had previously flowed there, without any agency on the part of the defendant in causing such increased flow; and if they shall further find that such increased flow and volume of water within the last four or five years would have occasioned an overflow of the plaintiff's premises at and before the time of the injuries complained of, as said premises then were, even if no change had been made in the open gutter and the pavement across Clinton street and in front of plaintiff's house, (spoken of by the witnesses as existing, and made about the year 1880,) then the plaintiff is not entitled to recover in this action.

7. That if the jury shall find from the evidence that the water complained of by the plaintiff as causing injury to his premises by overflowing the same, is the accumulation of rain and surface water which falls upon the ground north and east of plaintiff's premises, and by natural flow runs to the north side of defendant's tracks, and thence along said tracks to the ground between the tracks and plaintiff's premises, and that so much of the said water as runs along the defendant's tracks has always been accustomed to flow along the track to the westward and to the neighborhood of plaintiff's premises ever since the track was constructed, and that this was upwards of twenty years before the happening of the injuries complained of, and that the water so reaching the defendant's tracks was not brought there by any agency of the defendant whatever, then the defendant was and is under no legal obligation whatever to provide ways and means for keeping the water off the plaintiff's premises, or for disposing of the same by underground pipes or sewers, or otherwise.

8. That if the jury shall believe from the evidence that the pavements on the plaintiff's premises were not properly

constructed, and that if they had been the injuries complained of would not have occurred, then, under the pleadings in this case, the plaintiff is not entitled to recover, and the verdict of the jury must be for the defendant.

9. That if the jury shall believe from the evidence that the original construction of the plaintiff's house, or alterations made in it by plaintiff, or the changes naturally incident to a house, such as that of the plaintiff, or any of them, was sufficient to cause the injuries to the house, such as have been testified to, then, under the pleadings in this case, the plaintiff is not entitled to recover.

10. That the jury are not at liberty to consider in the way of damages, anything which has been testified to by the several witnesses as happening or existing since the time this suit was brought.

The defendant's first prayer was conceded, and the Court, (WATTERS, J.,) granted the plaintiff's prayer, and the defendant's second, third, sixth, seventh, eighth and tenth prayers, and rejected the defendant's fourth and fifth prayers, and the defendant's ninth prayer as offered, but granted the same with the addition as follows:

"Unless the jury after taking into consideration all the facts and circumstances of the case as testified to by the witnesses, (including such defective constructions and changes, if the jury shall so find,) shall determine from a preponderance of testimony that the injuries complained of were occasioned by the acts of the defendant as set fourth in the plaintiff's first prayer."

The defendant excepted, and the verdict and judgment being for the plaintiff, this appeal was taken.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, ROBINSON, IRVING, BRYAN, and McSHERRY, J.

*John J. Donaldson*, and *Bernard Carter*, for the appellant.

The law of the plaintiff's prayer is in conflict with the well settled rule that no action can be maintained for changing the course or obstructing the flow of surface water by erections, &c., on adjoining land. *Dickinson vs. City of Worcester*, 7 *Allen*, 19 ; *Gannon vs. Hargadon*, 10 *Allen*, 106 ; *Swett vs. Cutts*, 50 *N. H.*, 439.

This prayer was defective in that it ignored some of the most material facts of the case, established by uncontradicted testimony, and therefore it should not have been granted.

The prayer of the plaintiff holds the adjoining land owner to too high a measure of responsibility. The defendant was only bound to provide for such a flow of surface water from the point in question as might reasonably be expected. *Coulson and Forbes on Waters*, 138 ; *Nichols vs. Marsland, L. R.*, 2 *Ex. Div.*, 1 ; *Nield vs. London & North Western Railway Co., L. R.*, 10 *Ex.*, 4 ; *Blyth vs. Birmingham Water Works Co.*, 11 *Ex,*, 781 ; *Withers vs. North Kent Railway Co.*, 27 *L. J. Ex.*, 417 ; *Carstairs vs. Taylor, L. R.*, 6 *Ex.*, 217 ; *Box vs. Jubb, L. R.*, 4 *Ex. Div.*, 76 ; *Short vs. Balto. City Pass. R. W. Co.*, 50 *Md.*, 84.

The jury can find that the defendant's acts caused the injuries complained of only by negativing every other sufficient cause which was in operation at the time, unless such other causes were set in motion by defendant. *Bigelow's Leading Cases on the Law of Torts*, 610 ; *Insurance Co. vs. Tweed*, 7 *Wallace*, 44, 52 ; *Carter vs. Towne*, 103 *Mass.*, 507 ; *Balto. & Potomac R. R. vs. Reaney*, 42 *Md.*, 136-7 ; *Cotton vs. Wood*, 8 *Com. Bench, N. S.*, 568 ; *Phelps vs. Great Eastern Rw.*, 21 *Law Times, N. S.*, 443 ; *Holmes vs. Mather, L. R.*, 10 *Ex.*, 261.

*S. A. Williams*, and *John T. Ensor*, for the appellee.

YELLOTT, J., delivered the opinion of the Court.

An action on the case was instituted by the appellee against the appellant to obtain compensation, by the recovery of damages, for alleged injuries to the plaintiff's property caused by an overflow of surface water resulting from an alteration by the defendant of an existing drainage. The appellee is the owner of a house and lot in Canton at the northeast corner of Clinton and Boston streets. The appellant has a line of railroad laid on the bed of Boston street, which street terminates at its junction with Clinton street; but the track of the road crosses Clinton street, and, extending eastwardly, passes the south side of appellee's lot in such close proximity that only a space of a few feet intervenes between the curb of the sidewalk on the south of said lot and a lateral track leading from the main track of the road into a large open lot north of Boston street. In 1880, and for more than twenty years anterior to that period, there was a large open gutter or water channel in which the surface water flowed from the higher ground north and east of the railroad. This gutter extended along the track, passing the south side of appellee's house and across Clinton street and then down Boston street westwardly, until it discharged the current of water into an open ditch through which it was carried into the Patapsco River. There is evidence tending to show that this open gutter was of ample capacity to carry off the surface water, and that the appellee sustained no injury from an overflow prior to 1880, when the appellant closed this open gutter along Boston street, across Clinton street, and eastwardly to a paved alley in the rear of appellee's house; substituting for said open gutter an iron pipe, with an interior diameter of about eighteen or twenty inches. It is also shown by the evidence that the bed of Clinton street, at the crossing, was raised; that a box drain was put across the tracks on the east side of and parallel with Clinton street; and that across Clinton street was put a

smaller drain, covered with iron plates. Into the box drain and at right angles thereto was introduced another box drain, immediately south of appellee's pavement. It is alleged, and evidence has been adduced tending to show that these alterations in the drainage lessened the capacity of the outlet for the surface water, so that whenever there was a copious rainfall the water accumulated and flowed into the appellee's cellar. The result of this flooding has been a serious injury to the walls of the building, which have been so badly cracked and weakened that desirable tenants have abandoned the property. To recover damages for the injury thus sustained, this action was instituted.

It is observable that this record does not disclose a case where there has been an artificial obstruction interposed so as to produce an interruption or diversion of the current of a permanent stream of water flowing in its ordinary channel. The injury complained of proceeds from an obstruction to the flowage of surface water which, prior to the alleged wrongful act of the defendant, had found an ample outlet through which it was carried off, without any damaging consequences to the property of coterminous proprietors. In considering questions thus arising, we encounter some diversity and conflict in the reported decisions. In Massachusetts and some other States it has been held that the owner of land may lawfully prevent surface water from coming upon it, although, in so doing, the water may be made to flow upon adjoining land and cause loss and injury to coterminous proprietors. *Gannon vs. Hargadon,* 92 *Mass.,* 106 ; *Dickinson vs. City of Worcester,* 89 *Mass.,* 19 ; *Buffum vs. Harris,* 5 *R. I.,* 243.

But in most of the States this doctrine does not seem to have been sanctioned by adjudication. In a case very recently decided by the Vice-Chancellor of New Jersey, it was emphatically said that "the broad doctrine, declared by some Courts, that no right of any kind can be claimed in

the flow of surface water, and that neither its retention, diversion, repulsion or altered transmission, will constitute an actionable injury, has never been adopted, in all its length and breadth, in this State." *Field vs. West Orange*, 2 *Atl. Rep.*, 237, *and* 36 *N. J. Eq.*, 118, *and* 37 *N. J. Eq.*, 600.

The prevailing doctrine in this country seems to be that the owner of the upper land has a right to the uninterrupted flowage of the water caused by falling rain and melting snow, and that the proprietor of the lower land, to which the water naturally descends, has no right to make embankments whereby the current may be arrested and accumulated on the property of his neighbor. This is the rule of the civil law, apparently founded on the principles of justice, and said to be " received with constantly increasing favor in the United States." *Crawford vs. Rambo*, 4 *West. Rep.*, 445 ; *Martin vs. Riddle*, 26 *Penn. St.*, 415 ; *Porter vs. Durham*, 74 *N. C.*, 767 ; *Butler vs. Peck*, 16 *Ohio St.*, 336 ; *Ogburn vs. Connor*, 46 *Cal.*, 346.

The principle established by these authorities seems to sanction the doctrine that if the water is allowed to flow without artificial obstruction, and the current encounters a natural obstruction, caused by the elevation of the earth's surface at the boundary line, the proprietor of the upper land has no right to demand an outlet of his neighbor, nor is the latter liable for any injury caused by the accumulation of the water ; for it would be absurd to say that a man can be sued for damage caused by the operation of natural laws not put in motion by his own instrumentality. But every man is responsible for injuries resulting to others from his own acts not sanctioned by legal principles. So, if for the purpose of constructing a railroad, or for any other purpose, it becomes necessary to erect an embankment, a proper outlet or culvert must be provided, of ample capacity to carry off the flow of water, so that it may not be obstructed and thus accumulated on the upper and adjacent lands of other persons; for, as

regards coterminous estates, no one can legally assume the right to alter the condition of things so as to injuriously to affect the pre-existing rights of his neighbor. The outlet must, therefore, be carefully and skillfully constructed, so that no damage may result to contiguous property. In *Harrison vs. The Great Northern Railway Company*, 3 *Hurlst. & Colt.*, 236, POLLOCK, C. B., said:

"They are bound to maintain a sufficient cut or delph. The sufficiency of a cut depends on its depth, width, fall and outlet, as compared with the water likely to be in it. Now in this case the cut was not sufficient to hold the water likely to be in it, owing to the condition of the outlet."

The rule is that the outlet must be of ample capacity to carry off all the water likely to be in it. But the rule is not applicable to an extraordinary and excessive rainfall, which is held to be *vis major*. Such infrequent and extraordinary occurrences cannot be foreseen and provided against, and for damages caused by them no one is responsible. Recognizing and adopting this principle, the Supreme Court of Texas, in an action to recover for injuries caused by the construction of insufficient culverts in the defendant's railroad embankment, held that "if the overflow was of such an extraordinary character that railroad engineers of ordinary care and prudence in the construction of the embankment and culverts could not reasonably be expected to have anticipated and provided against, the railroad was not liable." *Gulf, Colorado & S. F. Ry. Co. vs. Pomeroy*, 67 *Texas*, 498.

With this exception in relation to extraordinary floods, the rule is as already stated. And it is held that where, in some particular locality a municipal corporation is under no obligation to construct drains or culverts so as to protect the property of individuals or to provide means for carrying off surface water, yet if it does construct them, and the work is performed in a negligent or unskillful manner,

or if it is negligent in the management of them it is liable in damages. *Seifert vs. City of Brooklyn,* 4 *N. East. Rep.,* 321; *Gilluly vs. City of Madison,* 63 *Wis.,* 518; *Henderson vs. City of Minneapolis,* 32 *Minn.,* 319; *Allen vs. City of Chippewa Falls,* 52 *Wis.,* 430.

In *Johnston vs. District of Columbia,* 118 *U. S.,* 19, GRAY, J., said that "the construction and repair of sewers, according to the plan adopted, are simply ministerial duties, and for any negligence in so constructing a sewer, or keeping it in repair, the municipality, who has constructed and owns the sewer, may be sued by a person whose property is thereby injured."

In the case now under consideration the appellant undertook to alter the established outlet through which the surface water was carried away. It was incumbent on the corporation to have this work done in a careful and skillful manner. If done carelessly and negligently, so that, as a consequence, injury to the plaintiff ensued, an action for damages is maintainable. The facts in evidence, relating to the manner in which the work was done, were considered and passed upon by the jury, guided and enlightened, in relation to the legal principles applicable to the evidence believed by them to be true, by the instructions emanating from the Court. The rulings of the Court, on the instructions asked for, present the questions now to be determined.

The plaintiff offered but one prayer, which was granted, and to this ruling the defendant excepted. In this instruction the jury are told that if they believe from the evidence that the defendant closed the open trench or gutter and raised the bed of Clinton street, and that the closing of the gutter and raising the bed of the street caused such water, as usually flowed through said gutter, to dam and overflow the plaintiff's premises, and that such damage and overflow would not have occurred but for the closing of said gutter and raising the bed of said street, and that

the plaintiff's house was injured by such overflow, then they must find their verdict in favor of the plaintiff. In other words, the jury were told that if they believed from the facts offered in evidence that the property of the plaintiff was injured, and that the injury was caused by the act of the defendant in closing the usual outlet for the surface water, raising the bed of the street, and construct-ing another outlet of insufficient capacity to carry the water likely to be in it, the defendant was liable. This instruction was tantamount to saying that the defendant was liable for injuries resulting from its own unskillfulness or negligence, and there was no error in granting it.

The defendant offered ten prayers, two of which were rejected and another granted with modifications made by the Court. To the rejection of these two prayers, and to the granting of the other as modified, exceptions have been taken. The fourth and fifth prayers of the defendant were properly rejected. The fourth prayer presents the proposition "that there is no legally sufficient evidence in this case that the defendant changed the natural direction of the drainage at or near the plaintiff's premises." This is repeated in the fifth prayer with the addition that there is no legally sufficient evidence that the defendant ever diminished or decreased the carrying capacity of any of the drains except the drain across Clinton street. An analysis of the evidence in relation to alterations in the drainage would lead to useless prolixity, and it is sufficient to say that there is proof in abundance, offered on the part of the plaintiff, tending to show that there have been changes in the mode and direction of the drainage, and that the present plan of drainage adopted by the defend-ant is insufficient to carry off the currents of water. The Court could not have granted these two prayers relating to the legal insufficiency of the evidence, because, each being in the nature of a demurrer to evidence, the truth of the evidence must have been assumed. The ninth prayer of the defendant reads thus:

" That if the jury shall believe from the evidence that the original construction of plaintiff's house, or alterations made in it by plaintiff, or the changes naturally incident to a house such as that of the plaintiff, or any of them, was sufficient to cause the injuries to the house, such as have been testified to, then, under the pleadings in this case, the plaintiff is not entitled to recover."

This prayer was modified by the addition of the following words: "Unless the jury, after taking into consideration all the facts and circumstances of the case as testified to by the witnesses, (including such defective construction and changes, if the jury shall so find,) shall determine from a preponderance of testimony that the injuries complained of were occasioned by the acts of the defendant as set forth in the plaintiff's first prayer."

It will be observed that the prayer as offered did not put it to the jury to find that the original construction or the alterations in the house, did actually cause the injury which forms the foundation for this action. The prayer as presented tended to mislead the jury. Moreover in this case there was another independent and efficient cause which might have been productive of the injury, and the Court very properly modified the instruction so as to bring that cause under consideration by the jury. *Balto. & Potomac R. R. Co. vs. Reaney,* 42 *Md.,* 136.

Finding no error in any of the rulings of the learned Judge in the Court below, the judgment should be affirmed.

*Judgment affirmed.*

(Decided 6th January, 1888.)

MILLER, J., dissented.