EZRA B. WHITMAN, ET AL., STATE ROADS COMMISSION OF MARYLAND *v.* WILLIAM P. FORNEY, ET UX.

[No. 8, April Term, 1943.]

*Decided April 28, 1943.*

The cause was argued before SLOAN, C. J., DELAPLAINE, COLLINS, MARBURY, GRASON, and ADAMS, JJ.

*William J. McWilliams,* with whom were *William C. Walsh, Attorney General,* and *Edmond H. Johnson, Special Assistant Attorney General,* on the brief, for the appellants.

*Robert E. Kindred* for the appellees.

MARBURY, J., delivered the opinion of the Court.

The appellants, constituting the State Roads Commission, filed a bill of complaint in the Circuit Court for Anne Arundel County to enjoin the appellees from obstructing and continuing to obstruct the flow of storm water from Light Street Road, a State highway, which is part of the Baltimore-Annapolis Boulevard, through the terra cotta drain pipe and drainage ditch across the appellees' property, and to require the appellees to restore to its original condition this terra cotta pipe under their dwelling house.

It appears from the evidence that Light Street Road was a county road prior to its becoming a part of the State Road System. When or how it was taken over by the State does not appear, but the testimony indicates that it has been a State road for over thirty years. The tract of land on the west side of the road, of which the appellees' land is a part, formerly was owned by some people named Helmer, who occupied it as a farm for about fifty years. They eventually laid out the property

in lots, and sold these lots to various persons. One of the last lots sold was that one belonging to the appellees. It was purchased by a man named Gross on April 14, 1924. When he bought the property there was a ditch running through it, which ran from a culvert under the road back more than half the depth of his lot, then turned abruptly to the right, and went through some adjacent property to a stream called "Saw Mill Branch." The land at the road slopes from east to west, and this ditch carried off the surface water. Gross built a small, three-room house on the property beside the ditch, and then put terra cotta pipes in the ditch from a point almost, but not quite, at the entrance of the culvert to a point in the rear of his home. These pipes were bought by him. After they were placed in the ditch, the latter was filled up. Subsequently the house was extended over that part of the covered ditch, which when open, ran along side of it. It does not appear from the testimony whether or not the appellants were consulted about the installation of the pipe. Mr. Gross said his wife attended to it, and it was so long ago he did not know. It is undoubtedly true that the appellants knew about it and did not object to it. It apparently worked quite well, drawing off the surface water that came down the east side of the road, which ran under the culvert, through the pipe and the open ditch to the next property and then to the stream. Gross sold to Penland in 1930. Penland started to dig the cellar out to put in the furnace, and found the pipe running along one side. He covered up the pipe, and while he testified that whenever it rained his cellar was flooded with water, he did not know whether this came from the pipe or not. Penland rented to some people named Reeder, who lived in the house nearly three years. Mr. Reeder said, whenever it rained, the drain water from the sink and bath backed up in the cellar and conditions were very bad. There was considerable odor and disinfectants had to be used. He cleaned out the open part of the ditch in the rear of the property three times a year.

The appellees bought the property from Penland in 1941. Mr. Forney looked over the property and went in the cellar, but did not know there were any broken pipes there before he purchased it. After he got in the property he started to dig in the cellar to put in a hot water furnace, and found a broken pipe out of which black, slimy water came, and a very bad odor. He then notified the State Roads Commission and they offered to repair the pipe. Subsequently and before this was done, Mr. Forney said he wanted the pipe line taken out of the cellar and put on the outside. The appellants said they would supply the labor and relocate the drain, if the appellees would supply the pipe, but the appellees did not agree. The appellees then got in touch with the county health officer, and he made several visits there, accompanied at one time by one of the county commissioners. He finally told the appellees to block off the ditch where it entered their property. This they did, and as a result, water backed up along the road and overran other property. This suit was brought to restore conditions to those existing at the time the appellees blocked the pipe line. The court below declined to grant the injunction requested and dismissed the bill. From that action, the appeal comes here.

Two schools of thought have existed in the various States throughout this country on the question whether the owner of lower land may prevent the natural flow of surface water thereon from the land lying above it. These two conflicting schools are thus described in *Tiffany on Real Property*, 3rd Ed., Vol. 3, Sec. 743: "In some States the rule of the civil law has been adopted, according to which land on which surface water naturally flows from another tenement is regarded as subject to a servitude of receiving such flow, and consequently the owner has no right, by any erection or improvement to prevent the escape thereon of water from the higher land. In other jurisdictions, what is known as the 'common-law rule' obtains, according to which the ordi-

nary right of an owner of land to make any use whatever of his land either by erections thereon or changes in the surface, is regarded as independent of the effect which such erections or changes may have in causing water which naturally flows off on his land to collect or flow on other land." The States in which the civil law rule has been adopted as stated by Tiffany are: Alabama, California, Georgia, Illinois, Iowa, Kentucky, Louisiana, Maryland, Michigan, Minnesota, North Carolina, Ohio, Pennsylvania, South Dakota, Tennessee, and Texas. The jurisdictions listed as adopting the common law rule are: Arizona, Arkansas, Connecticut, District of Columbia, Indiana, Kansas, Maine, Massachusetts, Mississippi, Missouri, Nebraska, New Jersey, New York, Oklahoma, South Carolina, Virginia, Washington, and Wisconsin. There is also a case in the United States Supreme Court administering New Mexico territorial law.

The inclusion of Maryland in the States adopting the civil rule seems to be justified by a decision of this *court* in 1888 in the case of *Philadelphia, Wilmington & Baltimore Railroad Co. v. Davis*, 68 Md. 281, 11 A. 822, 824. In that case this court discussed decisions in other States and said: "The prevailing doctrine in this country seems to be that the owner of the upper land has a right to the uninterrupted flowage of the water caused by falling rain and melting snow, and that the proprietor of the lower land, to which the water naturally descends, has no right to make embankments whereby the current may be arrested and accumulated on the property of his neighbor. This is the rule of the civil law apparently founded on the principles of justice, and said to be 'received with constantly increasing favor in the United States'." The principles thus outlined were applied in that case to a railroad which had closed a gutter and substituted an iron pipe. These alterations had lessened the capacity of the outlet for the surface water, and had flooded the cellar of the plaintiff. The court said it was incumbent on the railroad when altering the established outlet to

do it in a careful and skillful manner, and if done carelessly and negligently, resulting in injury to the plaintiff, an action of damages could be maintained.

The principles laid down in this case have not been departed from in this State, but on the contrary, have been reaffirmed in the later cases of *Baltimore & S. P. R. Co. v. Hackett,* 87 Md. 224, 39 A. 510; *City Dairy Co. v. Scott,* 129 Md. 548, 100 A. 295, and *Eisenstein v. Annapolis,* 177 Md. 222, 9 A. 2d. 224. Applying these principles to the case before us, it appears that the State Roads Commission has the right to have surface water from its roadbed run according to its natural flow across the land of the appellees. This is without regard to the question of a prescriptive right in an easement across appellees' property. Not all of the elements necessary to create an easement by prescription are present. In view of the covered condition of the ditch, it seems to be doubtful whether the use of the property was notorious for the required period, and in view of the placing of the pipe in the ditch by Gross, either with or without the consent of the State Roads Commission, it would seem that the use was permissive rather than hostile.

The prayer of the bill, as we have stated, is that the appellees cease from obstructing the flow in the pipe and ditch and restore the pipe to its original condition. This would, according to the testimony, result in re-creating the hazard to health condemned by the county health officer, and is more than the appellants have the right to demand. They have impliedly consented to the filling of the open ditch, and the construction of part of a house over it. They are, therefore, no longer entitled to have the ditch open. It would be an anomalous situation for a court to require a land owner to open a way to lead water into his cellar. The State Roads Commission must be held to have consented to the pipe method for diverting their surface water. Under these circumstances it becomes a question, what is reasonable to require of the appellees in order to have the surface water run through

their property. Any injunction granted must not be broader than the issue raised by the pleadings (*Chesapeake, Etc., R. Co. v. Richfield Oil Corp.*, 180 Md. 192, 23 A. 2d 677), but this does not prevent the granting of a lesser remedy than that asked.

The adoption of a hard and fast rule under the strict common law theory would permit the lower land owner to shut off the natural flow of water on his land, and cause great hardship to the owner of the upper land, and possibly to the owners of contiguous lands on whom the overflow would spread. This court has not adopted the common law rule. As we have shown, we have held with the civil law rule States that the upper land owner has a right to have his surface water flow in its natural course over the lands of the lower owner. Yet a strict application of this rule also might result in very great hardship on the lower land owner, who would thereby be prevented from improving his land or using it as he would otherwise have a right to use it. In cases where such hardship would necessarily ensue to one or the other of the owners, courts have sometimes adopted what may be called a "reasonableness of use" rule. That rule is based upon the facts in a particular case and is peculiarly appropriate for an equity court to follow. It creates no precedent, does not change the adopted rule of law, but provides mitigation for the harsh application of either of the rules, which might be applied in the particular State in which the case arises. This rule was discussed and applied in a carefully considered opinion in the Supreme Court of New Hampshire, delivered by Judge Walker, in the case of *City of Franklin v. Durgee*, 71 N. H. 186, 51 A. 911, 913, 58 *L. R. A.* 112. The court there said: "The question presented in such cases is not so much one of law as of fact. It would doubtless be convenient if it could always be answered by citing a stereotyped definition of legal right. But, as the situation of all adjoining owners of land is not the same, and as the circumstances attending the use of land in view of

the flow of surface water are infinitely various, the failure to attain substantial justice by the enforcement in all cases of a rule of law which does not recognize these important differences is not surprising. The result is that the question of the reasonableness of the use in a given case must be determined as a question of fact under all the attendant circumstances." See also *Harvard Law Review*, Vol. LVI, pages 582-584.

The case before us presents a state of facts in which the rule of reasonableness of use is applicable. The obvious and common sense method out of the difficulty is for the parties to reach an agreement by which the pipe line may be relocated across the appellees' land in such a way as not to interfere with their cellar, and at the same time afford escape for the surface water from the appellants' road. Such an agreement, however, must be made by the parties and not by the court. Since it has not been made, we have to take the case made by the record, and determine what is fair and reasonable to be done in view of the circumstances and the rights of the parties.

It seems to us that the appellees should not be required to reopen the pipe line unless the appellants put it in repair and keep it so. While the appellants are entitled to drain their waste water through the appellees' land, such a right does not give them the further right of compelling the appellees to maintain the drain at their own expense, in view of the fact that they acquiesced in the filling of the ditch, and the construction of the house over it. We believe the substantial ends of justice will be served if the appellees are required to permit the appellants to go on their property for the purpose of repairing and keeping in repair the pipe and ditch in such a way that it will not endanger the health of the occupants of the appellees' dwelling, and that only when such repairs have been made, will the appellants be entitled to have the drain reopened and to have their surface water flow through it.

As a result of these views, the decree will be reversed and the case will be remanded in order that a decree may be passed in accordance herewith. As both sides have stood stubbornly on their supposed rights, and have seemed unwilling to adjust their differences, it seems fair that appellees should pay only their own costs.

*Decree reversed, case remanded, appellees to pay their own costs.*