BISHOP ET UX. *v.* RICHARD ET UX

[No. 131, October Term, 1948.]

■■■■■■■■

*Decided April 1, 1949.*

■■■■■■■■

■■■■■■■■

The cause was argued before DELAPLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*W. Hyland Van Sant* for the appellants.

*K. Thomas Everngam* for the appellees.

COLLINS, J., delivered the opinion of the Court.

This is an appeal by Oscar Bishop and Elnora C. Bishop, his wife, appellants, from a decree of the Circuit Court for Caroline County granting an injunction prayed by Calvin R. Richard and Elsie M. Richard his wife, appellees.

The bill of complaint alleges in part that the appellees are the owners of two tracts of land in Caroline County to the south of the lands of the appellants. For over fifty years the appellees' land has continuously drained naturally through ditches and tile pipes across the land of the appellants to a main ditch and then into the Choptank River. The ditches on appellants' land have become blocked so that the drainage from the appellees' land has been impeded. Appellees have requested permission from appellants to clean out the ditches. Permission has been refused and appellees have been driven from appellants' land by Oscar Bishop. The bill asks (1) that the appellants be enjoined from filling up or in any manner preventing the ditches on their property from properly functioning and (2) that the appellants be enjoined from interfering in any way with the appellees going on appellants' land and cleaning the said ditches in a reasonable and proper manner so that the ditches may be restored to their former condition in order that they will properly operate. After answer filed and the taking of testimony in open court, the chancellor decreed relief (2) above prayed and from that decree the appellants appeal. The relief asked in (1) was not decreed and there is no cross appeal.

As the appendix to appellants' brief consists only of the pleadings in the case and the opinion and decree of the chancellor and no testimony, we are confined to the facts as found by the chancellor and to the testimony in the appendix of appellees' brief. *Strohecker v. Schumacher,* 185 Md. 144, 146, 43 A. 2d 208; *Condry v. Laurie,* 186 Md. 194, 197, 46 A. 2d 196; *Butler v. Reed-Avery Co.,* 186 Md. 686, 690, 48 A. 2d 436; *Queen v. Anderson,* 191 Md. 522, 62 A. 2d 612, 613. The appellants in their argument in this Court stated that the facts found by the chancellor were substantially correct, but assign as error the application of the law to those facts.

The facts thus revealed follow. The lands of the appellants, Bishop, lie north of those of the appellees, Richard. The locality is flat and drainage a problem.

The general fall of the land and the natural flow of the surface water, although slight, is from a southerly direction (from the Richards' lands) in a northerly direction (toward the Bishops' lands). For a period of about fifty years four or five well defined ditches have existed across the Bishop farm and have drained various portions of the Richard farm. The ditches on the Bishop farm have been continued across the Richard property. At various times tile drain pipes have been installed in the bed of the ditches on the Richard property. From time to time the ditches on the Richard property have been straightened and branched laterally. The water from the Richard farm and the Bishop farm is finally discharged from the four or five ditches on the Bishop farm into a large drain passing under the public road and the water flows eventually in a northerly direction into the Choptank River. The natural slope of the land has caused the water from the Richard property to flow naturally across the Bishop farm for at least thirty years. The chancellor found: "As stated, the natural slope of the land, although slight, is from the Richards farm toward the Bishop farm, and the water from the Richards farm has flowed across the Bishop farm for many years, possibly thirty to fifty years." Within the past two years, however, Mr. Richard has improved the ditches leading into a swamp of six or seven acres. A change has also been made in the last four or five years in a ditch on the Richard property to a field of about fifty-two acres. Various estimates were given by witnesses as to the increase of the flow of the water since these changes. The chancellor found that the additional drainage created by the appellees has not greatly added to the burden imposed on the land of the appellants. The chancellor said "the defendants' witnesses testify that the difference in flow, as observed by them in dry weather, is that, whereas the ditch near their buildings formerly was entirely dry, now in the summer time, two or three inches of water is in the bottom of the ditch." In fact, Mrs. Elnora C. Bishop, one of the appellants, when asked on cross-examination

about the flow of the water before the changes made by the Richards, stated that there was "a pretty good stream there in the winter time and a few months in the summer, then it was dry." When asked by the chancellor on direct examination whether the increase in the water "does any harm because it runs in July or because it runs swifter in the wintertime," she replied: "No, it doesn't do any harm but it goes to show there's more water down that ditch than before."

The appellants also offered testimony that a large quantity of water in the spring of 1948 came down from the Richard farm and inundated a part of appellants' land. It appears, however, that 1948, being a very wet year, the flooding was caused by the fact that appellants' ditches were not properly opened. From the facts before us we agree with the finding of the chancellor that the increase in the flow of water in the ditches has not been substantial. The testimony shows that after the appellees had made several requests of the appellants for permission to clean the ditches and this permission not having been granted, in order to prevent the overflow of the water, the appellees went upon appellants' land to clean the ditches and were ordered off by Mr. Bishop. There is also evidence that neighbors in the vicinity, whose lands were drained by the Bishop farm, in past years have joined together and cleaned the ditches.

The question therefore before us is whether the appellants should be enjoined from interfering with the appellees in cleaning out the ditches on appellants' land after there had been a slight increase in the amount of water in the ditches from the upper lands to the servient lands.

In the case of *Biberman v. Funkhouser*, 190 Md. 424, 58 A. 2d 668, decided by this Court April 23, 1948, the facts showed that as a result of grading of the upper lands the natural flow of the water across the servient lands had been slightly increased. It was noted that Maryland had adopted the rule of the civil law, that the owner of land is entitled to have surface water flow nat-

urally over the land of the lower (servient) land owner and that the lower owner cannot prevent the escape of water from the higher land onto his land. This principle was also announced in the recent case of *Whitman v. Forney*, 181 Md. 652, 31 A. 2d 630, decided April 28, 1943, where the owners of lower lands had blocked off a ditch carrying surface water from the State Road across their land and where this Court held that the owners of the lower land should permit the State Roads Commission to go on their property for the purpose of repairing and keeping in repair the drainage pipe and ditch. In both the cases of *Whitman v. Forney, supra,* and *Biberman v. Funkhouser, supra,* the following quotation was made from the case of *Philadelphia, Wilmington & Baltimore Railroad Co. v. Davis,* 68 Md. 281, 11 A. 822, 6 Am. St. Rep. 440, where the Court said, 68 Md. at page 289, 11 A. at page 824, 6 Am. St. Rep. 440, which is appropriate here: "The prevailing doctrine in this country seems to be that the owner of the upper land has a right to the uninterrupted flowage of the water caused by falling rain and melting snow, and that the proprietor of the lower land, to which the water naturally descends, has no right to make embankments whereby the current may be arrested and accumulated on the property of his neighbor. This is the rule of the civil law apparently founded on the pinciples of justice, and said to be 'received with constantly increasing favor in the United States.' " See also *Tiffany on Real Property,* 3rd Edition, Volume 3, Section 743; *Baltimore & S. P. R. Co. v. Hackett,* 87 Md. 224, 39 A. 510; *City Dairy Co. v. Scott,* 129 Md. 548, 100 A. 295.

In the case of *Whitman v. Forney, supra,* one of the prayers of the bill was that the owners of the lower land cease from obstructing the flow of water in the pipe and ditch. This Court pointed out that Maryland had adopted the civil law rule while New Jersey and other states abide by the common law rule, and said in that case 181 Md. at page 659, 31 A. 2d at page 633: "The adoption of a hard and fast rule under the strict common law theory would permit the lower land owner to shut off

the natural flow of water on his land, and cause great hardship to the owner of the upper land, and possibly to the owners of contiguous lands on whom the overflow would spread. This court has not adopted the common law rule. As we have shown, we have held with the civil law rule states that the upper land owner has a right to have his surface water flow in its natural course over the lands of the lower owner. Yet a strict application of this rule also might result in very great hardship on the lower land owner, who would thereby be prevented from improving his land or using it as he would otherwise have a right to use it. In cases where such hardship would necessarily ensue to one or the other of the owners, courts have sometimes adopted what may be called a 'reasonableness of use' rule. That rule is based upon the facts in a particular case and is peculiarly appropriate for an equity court to follow."

In the instant case the increase in the flow of the water is not substantial. It is difficult to see how the cleaning out of the ditches on the Bishop farm, if properly done, will in any way be a detriment to the appellants. If properly done it should be an advantage to appellants and prevent the inundation as occurred in 1948. Mr. Oscar Bishop, one of the appellants, admits that the ditches on his farm are now in need of cleaning. Under the facts we are of opinion that the decree should be affirmed. In going upon the appellants' land to clean out the established drainage ditches, the entrance of course should be reasonable and in a proper manner. The established ditches should be cleaned out in a reasonable and proper manner in order to facilitate not only the drainage of appellees' land but also of appellants' land. All debris taken from the ditches should be removed in such a manner as not to interfere with the proper cultivation of appellants' land. The decree in its general terms should be sufficient. *Five Oaks Corporation v. Gathmann,* 190 Md. 348, 58 A. 2d 656, 662.

*Decree affirmed, with costs.*